UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-300 (ECT/JFD)

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

NELSON THOMAS HARNER,

    Defendant.

**GOVERNMENT SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Esther Soria Mignanelli, Assistant United States Attorney, hereby submits its position with respect to sentencing of defendant Nelson Thomas Harner. Based on Harner's repeat child exploitation offenses, the grave harm he caused to the victims he preyed upon and revictimized in this case, his inability or unwillingness to rehabilitate, and the need to protect the community from further crimes of Harner, the government respectfully requests a sentence of life imprisonment.

## I.    BACKGROUND OF THE OFFENSE

Most of the following facts are set forth in the Plea Agreement (ECF No. 47 at ¶¶ 2–4) and the Revised Presentence Report ("PSR"), (ECF No. 69, at ¶¶ 14–21). The Government also incorporates by reference the additional details

set forth in its sealed addendum and supporting exhibits filed contemporaneously to this memorandum.

Between March 2019 and July 2019, Harner was relentless in his use of Instagram, Facebook, and text messaging to contact over 100 minor girls. *See* PSR ¶ 16. He victimized the three minor girls set forth in the Indictment and Plea Agreement, first by communicating with them as if in a romantic relationship, before then requesting and obtaining images and videos of their bodies or of them engaged in sexually explicit conduct.

Specifically, between March and July 2019, Harner stated to Minor A things like "Ur turning me into a naughty pedo" before requesting an image of her "p***y." PSR ¶ 17. Also, between March and May 2019, Harner repeatedly told Minor B, over Facebook Messenger, that he wanted to "rape" her or "force [his] c**k inside" her. PSR ¶ 18. Between March and May 2019, Harner employed similar predatory tactics to induce an 8-year-old victim to send him a close-up image of her exposed genitals. PSR ¶ 19. With Minor A, Minor B and Minor X, Harner referred to himself in their communications as "dad" or "daddy." *See* PSR ¶ 17–19; *see also* Government's Addendum ("GA"), at p. 2.

In addition, on May 2, 2019, in his communications with another young woman ("Individual 1"), Harner asked her if it "would bother [her] if" he "was a pedo" and whether she was "interested [i]n what [he's] into." In an apparent attempt to convince her to enjoy his own pedophilic predilections, he responded

2

by sending Individual 1 multiple child pornography videos and stated, "Enjoy…Ur gonna cum a lot as well." PSR ¶ 20.

In June 2019, Minnesota Internet Crimes Against Children received Cybertips from Facebook reporting the content of some of Harner's communications with the minor victims. The same month, Minnesota Bureau of Criminal Apprehension ("BCA") executed search warrants on several of Harner's social media accounts. Soon after officers reviewed the content of Harner's communications and tracked his phone location, he was arrested at the Hennepin County Library in Minneapolis on July 12, 2019. His communications with Minor A continued all the way up to the day before his arrest. PSR ¶ 17.

In the micro-SD card in Harner's phone, law enforcement officers found 29 videos and 11 images depicting child pornography, which included images of a prepubescent minor and images of sadistic or masochistic conduct. PSR ¶ 21. The National Center for Missing and Exploited Children (NCMEC) reviewed the files and determined that 9 known child pornography series were in Harner's collection.

As a result of Harner's criminal conduct, he was charged in a four-count indictment, with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), (e); Coercion and Enticement of a Minor, in violation of 18 U.S.C. §§ 2422(b), 2427; Distribution of Child Pornography, on or about May 2, 2019, in

3

violation of 18 U.S.C. § 2252(a)(2), (b)(1); and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(A), (b)(2). (ECF No. 1.) On July 11, 2023, Harner pleaded guilty to Coercion and Enticement of a Minor, and the Government agreed to dismiss the remaining counts at sentencing. PSR ¶ 2.

## II.   <u>SENTENCING GUIDELINES CALCULATION</u>

The Government agrees with the Guidelines calculations in the PSR. The PSR found that the total offense level, after taking into consideration acceptance of responsibility, begins at 44, but by operation of U.S.S.G. Chapter 5, Part A, the offense level is treated as an offense level of 43 (the highest on the Sentencing Guidelines Table).  PSR ¶ 66.  With a criminal history category of V, Harner's Guidelines range for sentencing is life.  PSR ¶ 103.

## III.   <u>SECTION 3553(a) SENTENCING FACTORS</u>

The government recognizes the permanence that comes with a life sentence.  Respectfully, that is the only sentence appropriate in this case and the only sentence that accomplishes federal sentencing goals. Perhaps most important, such a sentence accounts for the need for general deterrence, and for the sentence to protect the most vulnerable members of the community from further crimes of the defendant.

First, the defendant committed a serious offense that inflicted a lifetime worth of pain on his victims. The Supreme Court has long recognized that childhood sexual abuse has devastating and long-lasting effects on its victims.

4

*See New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). Children rarely fully recover from the trauma of sexual abuse.[1] In other words, the defendant's actions directly contributed to what will effectively be a lifelong sentence of recovering and healing for his victims. As the only victim in this case to have reached adulthood, "Lily" puts it better than any attorney could: circulation of her images "causes an unending grief," still causes her to lose sleep, to regularly have intrusive thoughts, and to experience stress levels so high that she occasionally dissociates. PSR ¶ 25.

Second, the defendant's relentless and predatory conduct started within two months of when he absconded from an inpatient sex offender treatment program after only 4 days of being there, and immediately following his incarceration for his Second Degree Criminal Sexual Conduct conviction. *See* PSR ¶¶ 15–16, 77. His prior conviction involved oral-vaginal contact, digital-vaginal contact, penile-vaginal penetration, and penile-anal penetration with his 7-year-old victim. Harner had also told her, "If you tell, I'll call the cops on you" and "they won't believe you." PSR ¶ 77. He was sentenced to 48 months imprisonment and 10 years' probation—and he went no more than 2 months back in society before preying on the additional minor victims in this case. And while preying on new victims, his words confirmed the worst of himself: he was

---

[1] A. Perry and D. DiLillo, *Child Sexual Abuse*, 147, in NA. Jackson, Encyclopedia of Domestic Violence, (2007).

proud, not ashamed, of the sexual abuse he inflicted on his 7-year-old victim. *See* GA, at pp. 2–3. In other words, fresh out of learning firsthand how awful prison can be, he again elected not to control himself; or he was incapable of it.

Third, the defendant's personal history and characteristics are not only laid bare by the offense conduct and many of the disturbing exchanges he had with or about minors in this case. Prior instances of law enforcement intervention have left no impression on the defendant despite him having had several attempts at treatment. Most recently, the defendant was returned to the custody of the Minnesota Department of Corrections during the pendency of this case so he could pursue treatment; an opportunity he again flouted. *See* PSR ¶ 101. Before being sentenced—especially in cases like this one, involving mandatory minimums ranging from 10 to 25 years—a person has the highest incentive to remain on their best behavior. But even under those circumstances, the defendant chose to possess inappropriate pictures, write about a criminal sexual fantasy, and violate other rules, including breaking of group confidentiality, which required termination of his treatment. If the defendant was incapable of presenting a credible interest in rehabilitation while awaiting this sentence, the Court should assume he is going to be every bit as dangerous the day he is released as he is today. When the danger threatened is toward the youngest or most vulnerable members of society, such risks are not worth taking.

6

Fourth, the defendant's conduct and abuse has been persistent. As set forth in greater detail in the Government's sealed addendum, the abuse he experienced as a child appears to be both mitigating and aggravating. While his early childhood history was certainly incredibly traumatic and likely left him isolated at all too young an age, his conduct also shows a willingness to prey on young victims who have also encountered life circumstances requiring them to survive within isolation. *See* GA at pp. 3–4. The defendant's own isolation and absence of any connection to family or a support network persist into the present. PSR ¶¶ 91, 94. This further aggravates the risk he poses if released.

Fifth, a life sentence in this case would also serve as an important general deterrent. General deterrence is the public response necessary to deter other people from committing similar crimes. Indeed, general deterrence is "one of the key purposes of sentencing." *Ferguson v. United States*, 623 F.3d 627, 631–32 (8th Cir. 2010). This is even more important in child exploitation offenses. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The Court can send a strong message to offenders like Harner who not only seek out the material generated by child victims' sexual abusers or to create new material themselves, but who are undeterred from doing so even after being prosecuted as a sexual abuser once.

Finally, a sentence of life will not create unwarranted sentencing disparities. For perspective, and at least in 2019, about 15% of defendants in child pornography production cases were sentenced as either a Criminal History Category V or higher.[2] For similar context, in 2022, only 3.6% of non-production child pornography defendants were sentenced as a Category V or higher.[3] In addition, less than half of federal production cases involved the victimization of more than one child, as was done by the defendant here in only the span of a few months.[4]  The court imposed a life sentence in a similar case involving a repeat child sex predator. *United States v. Mayer*, Case No. 19-cr-96 (WMW/HB). In *Mayer*, the defendant had previously been convicted of attempted third-degree criminal sexual conduct where his victim was a 13-year-old girl. While still under court supervision, and across the span of over one year, he also exploited a minor victim online by purporting to be in a relationship with her and downloaded thousands of images of child pornography to his devices.

---

[2] United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses*, at 18 (October 2021), accessible at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf

[3] United States Sentencing Commission, *Quick Facts: Child Pornography Offenders*, at 1 (2022) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Child_Pornography_FY22.pdf

[4] United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses*, at 27.

Although Harner has accepted responsibility in this case, his risk of dangerousness upon release, if any, is front and center before the Court. While there are never perfect comparisons in sentencing—where the goal is to address not only the offense conduct but the nuances of each person before the Court—these examples and the greater context within with child exploitation offenses are treated nationally all weigh in favor of a Guidelines sentence of life imprisonment in this case.

## IV.   <u>RESTITUTION</u>

Finally, restitution is not only appropriate but required in this case. 18 U.S.C. §§ 2259 & 3663A. According to the terms of the plea agreement, Harner agreed to pay restitution to Victims A, B, and X, and to any victim whose child pornography image or video he possessed as determined in the course of the investigation or by NCMEC. The parties agree that the amount of restitution owed will be determined using 18 U.S.C. § 2259 to reflect the victims' losses. As set forth in the PSR, one minor victim from NCMEC-identified series has requested restitution prior to the completion of the PSR. The government has not received any requests from the remaining victims in this case. As a result, Harner owes $3,000 in restitution to the requesting victim.

## V.    **CONCLUSION**

In this case, considering all the sentencing factors, the government respectfully requests that this Court impose on Nelson Thomas Harner a sentence of life in prison.

Date: May 3, 2024                    Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Esther Soria Mignanelli*
BY: ESTHER SORIA MIGNANELLI
Assistant United States Attorney