UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                                           )<br>                         Plaintiff,     )<br>                                                           )<br>v.                                                      )<br>                                                           )<br>NESLON THOMAS HARNER,     )<br>                                                           )<br>                         Defendant.   ) | Criminal No. 22-CR-300 (ECT/JFD)<br><br>**DEFENDANT'S POSITION ON SENTENCING** |

Nelson Harner, through undersigned counsel, submits the following position paper regarding sentencing. This particular pleading addresses various federal sentencing guideline issues that impact the recommended sentencing range and, in turn, the government's suggestion of a life sentence. Mr. Harner very respectfully requests that the Court recognize that the advisory guideline range here is thoroughly warped by a guideline analysis promulgated by an organization that explicitly disavows the resulting advisory guideline ranges in these kinds of cases as arbitrary and ungrounded in history or practice. Given Mr. Harner's particular circumstances – including the earlier imposition of a related state sentence, his demonstrable amenability to treatment, and his quick decision to plead guilty – defense counsel on behalf of Mr. Harner respectfully suggests that a 120-month sentence is far more in keeping with the statutory mandate that the sentence to be imposed must be sufficient, but not greater than necessary, to address the sentencing factors of 18 U.S.C. § 3553(a).

1

On July 11, 2023, Mr. Harner appeared before the Court and entered a guilty plea to Count Two of his indictment, coercion and enticement of a minor, in violation of 18 U.S.C. §§ 2422(b) and 2427. This plea was entered pursuant to an agreement between Mr. Harner and the government, a copy of which has been filed with the Court. Significantly, that plea agreement included an agreement by Mr. Harner to stipulate to the conduct underlying the remaining counts of the indictment, understanding that this information would be incorporated into the advisory federal sentencing guideline calculations; that said, Mr. Harner's willingness to provide a complete and unvarnished *mea culpa* for his behavior and to be held accountable for that behavior, it remains true that the applicable and ensuing sentencing guideline calculations suffer such methodological infirmaries as to be of little use in determining an appropriate sentence.

Here, the Presentence Investigation Report (PSR) recommends a total adjusted offense level of 43 and a criminal history category of V resulting in an advisory range of life. There is a mandatory minimum sentence of 120 months. As will be discussed, a sentence of 120 months (10 years) is sufficient but not greater than necessary to comply with the sentencing purposes codified at 18 U.S.C. § 3553(a).

**I.     U.S.S.G. § 2G2.2 is Arbitrary and Unsupported by Empirical Evidence, and Thus Not Entitled to Weight in the Sentencing Determination**

    **a.  The United States Sentencing Guidelines Are Not Mandatory and Are Not to be Presumed Reasonable**

The Probation Office has generated a sentencing range using the UNITED STATES SENTENCING GUIDELINES (USSG) for Mr. Harner. The recommended sentencing range of life would not serve any of the purposes of sentencing outlined in 18 U.S.C. § 3553(a),

2

and the Court has the authority to vary from the applicable advisory guideline range in that instance. An individualized assessment for Mr. Harner supports a sentence of 120 months.

The mechanical operation of the federal sentencing guidelines no longer binds sentencing courts. *United States v. Booker,* 543 U.S. 220 (2005). While "the Guidelines should be the starting point and the initial benchmark" in determining a sentence, *Gall v. United States*, 552 U.S. 38, 49 (2007), any guidance the Guidelines may provide must be "filter[ed] . . . through § 3553(a)'s list of factors." *Rita v. United States*, 551 U.S. 338, 358 (2007). Indeed, "[t]he Guidelines are not only **not mandatory** on sentencing courts; **they are also not to be presumed reasonable**." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis added). Instead, the sentencing Court "must make an **individualized assessment** based on the facts presented" in each case. *Gall*, 552 U.S. at 39 (emphasis added) (finding a sentence substantially below the Guidelines to be reasonable); *see also Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.") As the late Justice Stevens put it: "I trust that those judges who had treated the Guidelines as virtually mandatory during the post-*Booker* interregnum will now recognize that **the Guidelines are truly advisory**." *Rita*, 551 U.S. at 367 (Stevens, J., concurring) (emphasis added) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations").

3

Thus, "the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). This includes variances from the advisory Guideline range based solely on policy considerations, including disagreements with policies underlying the Guidelines "even in the mine-run case." *Id.* at 563, 570. Indeed, the *Gall* Court rejected the proposition that extraordinary circumstances are required to justify a sentence outside the advisory Guideline range. *See Gall*, 552 U.S. at 47. Ultimately, a sentencing judge must "impose a sentence sufficient, but not greater than necessary." *Kimbrough*, 128 S.Ct. at 570 (citing 18 U.S.C. § 3553(a)).

### b. Parsing the Applicable Guideline Range

As mentioned at the fore, Mr. Harner entered a guilty plea to Count Two of his indictment, coercion and enticement of a minor, in violation of 18 U.S.C. §§ 2422(b) and 2427. Had this been the single-count indictment, the PSR denotes that the advisory guideline range would be an adjusted offense level of 28, resulting in a total offense level of 25 after acceptance of responsibility; when paired with a criminal history category score of III, that would result in an advisory guideline range of 70-87 months. (PSR at ¶¶ 34, 78.)

However, in conjunction with U.S.S.G. § 4B1.5 for being a repeat offender, a stand-alone conviction pursuant to 18 U.S.C. §§ 2422(b) with Mr. Harner's criminal history would be converted to an adjusted offense level of 37, a total offense level of 34

4

after acceptance of responsibility, and a criminal history category V, resulting in an advisory guideline range of 235-293 months.

These calculations, however, still fall short of the recommended advisory guideline range in this case because Mr. Harner ultimately is treated by the federal sentencing guidelines as if he had been convicted on all four counts of his indictment, resulting in a total offense level of 47, a criminal history category V, and the ensuing advisory range of life in prison. Although Mr. Harner agrees that these calculations are technically correct pursuant to the Sentencing Commission rules, these same rules have been expressly disavowed by the same Sentencing Commission as delineated below.

Accordingly, while none of this is intended to minimize Mr. Harner's conduct or the seriousness of his offense, it remains critically important to discern the basis for the guideline-generated recommendation, which directly informs the government's recommendation for a life term of imprisonment. That recommendation cannot stand when the foundations for that recommendation are less than rigorous.

II. **U.S.S.G. § 2G2.2 is Unduly Harsh and Fails to Make Meaningful Distinctions in Culpability**

Not all of the Guidelines are based on empirical data that reflect the wisdom and expertise of the Sentencing Commission. Accordingly, when particular guidelines are not the result of the "Commission's exercise of its characteristic institutional role," then the Court is not presented with a case in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough* at 574 (quoting *Rita*, 127 S.Ct. at 2465). In cases

5

involving application of guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a [typical] case." *Kimbrough* at 575. In such cases, the court is free to reject the guidelines in favor of its own determination of a reasonable sentence after applying the sentencing factors set forth in 18 U.S.C. § 3553.

In this particular case, the three remaining counts of the indictment are all governed by U.S.S.G. § 2G2.2, grouped by operation of Chapter Three of the federal sentencing guidelines, and then inflated once again via § 4B1.5. Given the outsized role of the offense levels generated by § 2G2.2 in setting the total offense level in this case, that guideline section requires the following historical context and deconstruction to perceive plainly how the advisory guideline range in this instance is wholly misleading and misplaced.

U.S.S.G. § 2G2.2 is emblematic of a guideline that does not reflect the wisdom and expertise of the Sentencing Commission. U.S.S.G. § 2G2.2 has been widely criticized as being harsher than necessary. *See* Carissa Byrne Hessick, *Post-Booker Leniency in Child Pornography Sentencing*, 24 FED. SENT'G REP. 87, 87 n.1 (2011) (listing a plethora of courts and commentators dissatisfied with U.S.S.G. § 2G2.2's harsh recommendations); *United States v. Beirermann*, 599 F. Supp. 2d 1087, 1106 (N.D. Iowa 2009) ("In short, the harsh advisory guideline sentences pursuant to U.S.S.G. § 2G2.2 for child pornographers, whatever their criminal conduct, criminal histories, or personal

6

characteristics, reflects a 'put them down the oubliette' mentality that has nothing to do with imposing a sentence that is 'sufficient, but not greater than necessary' to accomplish the goals of sentencing."). The Sentencing Commission has echoed concerns of routinely irrational sentence ranges, documenting non-evidence-based efforts by Congress to ratchet up the Guidelines over time, USSC, THE HISTORY OF THE CHILD PORNOGRAPHY GUIDELINES (2009), and recommending that Congress give the Commission authority to rationalize the process, USSC, FEDERAL CHILD PORNOGRAPHY OFFENSES 322 (2012). Thus far, Congress has declined the invitation, and there is little suggestion that legislative relief is on the horizon.

This lack of legislative action has forced the federal judiciary to step in, declining to give the relevant guidelines range much, if any, weight in sentencing decisions. Courts have based their non-adherence, for example, upon the irregular and arbitrary process that led to the CP Guidelines:

- Although the Commission typically uses an empirical approach to formulating guidelines, no such process was used with respect to these guideline sections.
- Instead, again and again, Congress ignored the Commission's recommendations, and directly amended the guidelines through legislation.
- Many of the relevant guideline enhancements apply in the majority of cases.
- The results "cobbled together through this process routinely result in guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases."

*United States v. Dorvee*, 616 F.3d 174, 184-88 (2d Cir. 2010); *accord United States v. Grober*, 624 F.3d 592, 600-09 (3d Cir. 2010); *United States v. Henderson*, 649 F.3d 955, 959-63 (9th Cir. 2011).

The sentencing guidelines for child pornography offenses, like the drug-trafficking guidelines analyzed by the Court in *Kimbrough*, were not developed under an empirical approach. *United States v. Baird*, 2008 WL 151258 (D. Neb. 2008) at 7. Instead, they were primarily promulgated "in response to statutory directives." *Id*. As the court observed in *Baird*, the sentencing commission itself has acknowledged the shortcoming of guidelines driven by statutory directives: "[T]he frequent mandatory minimums legislation and specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to discern the influences of the Commission from those of Congress." *Id*. at 7, quoting USSG, *Fifteen Year Assessment*, at 73. Accordingly, "because [these] guidelines do not reflect the Commission's unique institutional strengths, the court affords them less deference than it would to empirically- grounded guidelines." *Id*.; *quoting Kimbrough* at 574.

**III.   Courts Have Continually Used Their Discretion to Impose Downward Variances from U.S.S.G. § 2G2.2's Harsh Sentence Recommendations**

Understanding that U.S.S.G. § 2G2.2 lacks empirical backing and often recommends sentences far beyond what is necessary, federal courts have continually chosen to vary from the advisory guidelines range recommended by U.S.S.G. § 2G2.2. For example, in *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010), the Third Circuit Court of Appeals affirmed the district court's imposition of the mandatory minimum (60

8

months) when § 2G2.2 recommended a range of 235-240 months. *Id.* at 596, 611. The district court declined to sentence Mr. Grober within the advisory guideline range, instead giving the following three key reasons for its downward variance to 60 months, the mandatory minimum:  (1) "most of the enhancements are essentially inherent in the crime and, thus, apply in nearly every case"; (2) "the enhancements promote sentencing disparities"; and (3) "given the nature of CP, it can be very difficult for the defense to rebut the government's characterization of the egregiousness of a defendant's conduct or dispute the government's evaluation of the defendant's collection compared to the collections of others, both of which may bear on the applicability of § 2G2.2's enhancements." *Id.* at 597-98.

As in *Grober,* district courts within the Eighth Circuit have similarly grappled with the dimensions and applicability of § 2G2.2 in recognizing that the guideline greatly over-estimates and inflates sentencing ranges.  For example, in *United States v. Baird,* 580 F.Supp.2d 889, 894 (D. Ne. 2008), Chief Judge Battalion surveyed the intervention of Congress regarding these enhancements and concluded that § 2G2.2 specific offense characteristics "were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives" and that "[b]ecause the Guidelines do not reflect the Commission's unique institutional strengths," his sentencing court would "afford[] them less deference than it would to empirically-grounded guidelines."

Chief Judge Pratt reached the same conclusion in *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008), and courts in this district have ruled similarly in *United States v. Meillier*, 650 F. Supp. 2d 887, 895 (D. Minn. 2009) (Schiltz, J.) (quoting

9

*Kimbrough v. United States,* 552 U.S. 85, 109 (2007) for the proposition that, "when certain guidelines 'do not exemplify the Commission's exercise of its characteristic institutional role' and are not based on empirical data and national experience," such "guidelines are entitled to less deference from district courts[,]" *United States v. Grinsbergs,* No. 8:05CR232, 2008 WL 4191145, *5, 2008 U.S. Dist. LEXIS 91712, *14 (D. Neb. Sept. 8, 2008) (Bataillon, C.J.) for the principle that "'[t]he Guidelines for child exploitation offenses were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives[,]'" and concluding that "the guidelines for child-pornography offenses are, to a substantial extent, driven by politics, not science"; the court therefore departed from an advisory Guidelines range of 57 to 71 months to a sentence of one day in prison, 30 years of supervised release, and 2000 hours of community service, in the possession case before it).

Indeed, multiple jurists, federal courts of appeal, and federal district courts alike, from a variety of jurisdictions, have found § 2G2.2 to be flawed. *See, e.g., United States v. Helton*, 782 F.3d 148, 159 (4th Cir. 2015) (Gregory, J., concurring) ("when we talk about the slippery concept of reasonableness, we should be cautious of presuming that the child pornography Guidelines… always provides a reasoned departure point from which to calculate a sentence"); *United States v. Henderson*, 649 F.3d 955, 959-63 (9th Cir. 2011) (joining the First, Second, and Third Circuits in holding that "district courts may vary from the child pornography guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case" (citations and footnotes omitted)); *United States*

*v. Dorvee*, 616 F.3d 174, 184-88 (2d Cir. 2010) (noting the empirical deficiency and Congressional disregard of Commission recommendations embodied by § 2G2.2, the application of enhancements to the majority of cases, and the fact that the enhancements "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases"); *United States v. Kelly,* 868 F. Supp. 2d 1202, 1206 (D.N.M. 2012) ("Because § 2G2.2 punishes the worst crimes no more severely than routine offenses, and small-scale offenders have no incentive to keep from escalating their crimes, the goals of sentencing cannot be met."); *United States v. Diaz*, 720 F.Supp.2d 1039 (E.D. Wis. 2010) (collecting cases, citing *Dorvee, supra*, and finding "the guideline unhelpful").

These concerns are likely why 61.2% of all child pornography offenders received a below range variance in 2018. USSC, QUICK FACTS – CHILD PORNOGRAPHY OFFENDERS, FISCAL YEAR 2018 (October 2019) (noting that those child pornography offenders who received a downward variance had an average sentence reduction of 40.1%). All of this guideline criticism boils down to this simple statement: "The ultimate tension for a sentencing judge is between a mechanical application of the sentencing guidelines on the one hand, and a fair, reasonable sentence that does justice on the other." *United States v. Grober*, 595 F.Supp.2d 383, 383 (D.N.J. Dec. 22, 2008). For Mr. Harner, "[t]he ultimate question in terms of punishing him is: When is enough enough?" *Id.*

In sum, here the guideline range is born of a reflexive, arbitrary, non-evidence-based policy morass. This Court can and should recognize this fact, and accordingly give the advisory guideline range little or no weight.

## IV. Conclusion

Based on the foregoing points and authorities, Mr. Harner respectfully requests that the Court impose a sentence of 120-months in prison. As can be seen irrefutably, the federal sentencing guidelines.

Counsel for Mr. Harner will file a supplemental pleading under seal to address the remaining 3553(a) factors in support of the defense's respectful suggestion that a 120-month sentence would be sufficient, but not greater than necessary, to serve the many statutory goals of sentencing, and would fairly reflect the unique circumstances in this case.

Dated: May 6, 2024    Respectfully submitted,

*s/ James S. Becker*

_____
JAMES S. BECKER
Attorney ID No. 388222
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415